Booth, Judge,
concurring:
I concur in the opinion of the court and might well rest the matter with this statement. Having, however, positive conviction as to the case itself it may not be amiss to briefly discuss some features of the litigation which lead to the foregoing opinion.
The relationship between the carriers and the United States was contractual. The Postmaster General was free under the statute to negotiate and consummate such contracts for the carriage of the mails as he deemed just to both the contractor and the Government, subject only to the express limitations enumerated in the act of 1873. The limitations in the act of 1873, in so far as the present case is concerned, circumscribed alone the maximum compensation to be paid the contractor and prescribed a minimum period of *315 weighing to ascertain the “ average weight per mile per annum ” upon which the compensation was to accrue. There is nothing aside from these provisions in the statute which irrevocably bound the Postmaster General to contract with the carriers on the basis of the mathematical process adopted by him after the statutory weighing period had been observed ; he might pay the maximum compensation; he might pay less; and surely was invested with the official discretion indispensable to the making of an agreement fair to both parties. Within the zone prescribed by the terms of the act of 1873 there was an unfettered field wherein the right of contract was unabridged. The claimant companies and the Government within these limits stood upon an equality and the bargain consummated was subject in every way to the ordinary rules governing ordinary contracts. The claimant companies accepted the mails and performed their part of the contract in the face of an express provision, directly made a part of the contract, in response to claimants’ protest, and finally accepted the compensation fixed in the contract without further protest or objection. Yazoo & Miss. Valley R. R. v. United States, 50 C. Cls., 15.
A careful review of all the legislation pertaining to the administration of the Post Office Department, and particularly with respect to the transportation of the mails, discloses a legislative intent to refrain from denying a wide discretion to the Postmaster General in the matter of administrative detail. If Congress designed a fixed and determinate compensation to be paid upon the average mileage basis per annum there would have been no necessity to do more than provide the means of ascertaining the same and thereby limit the contracting authority of the Postmaster General. The various statutes upon this subject, as most pertinently observed by the Solicitor General, were clearly intended to fix a maximum compensation, fair in any event to the railroad company and of sufficient elasticity to protect the Government. The field of fair negotiation, except as expressly provided, was left open, and the railroad company was under no compulsion to accept the terms of a contract it believed to be onerous and unremunerative. (See cases cited in opinion *316 of Chief Justice.) ■ Having engaged to perforin a service under the terms of a contract authorized by law and having performed said service and accepted the full compensation agreed upon by the parties, it is difficult to perceive upon what authority a suit for increased compensation can be predicated in view of the authorities cited in the Chicago & Alton case, 49 C. Cls., 520, 521.
The act of 1873 expressly precludes the posibility of preciseness in ascertaining compensation to be paid the railroad companies for the transportation of Government mails. “The pay per mile per annum shall not exceed * * *. On routes carrying their whole length an average weight of mails per day * * * the average weight to be ascertained, in every case, by the actual weighing of the mails for such a number of successive working days, not less than thirty * * This language formulates a method inherently discretionary. The very terms used erect a flexible basis to meet changing conditions and varied circumstances. Thirty days was considered by Congress as the minimum of fairness in the ascertainment of an annual average. Can it be said that a long-continued departmental opinion that the period stated continues to bring to the railways a fair compensation ripens into an unchangeable law, absolutely concluding the department from meeting changed conditions and circumstances? Judge Barney has discussed this phase of the case, and with his discussion I unreservedly agree. I think the statute abounds with express and unambiguous terms which unmistakably repose a wide discretion in the Postmaster General, a clear legislative intendment to do no more than prescribe such limitations as Congress deemed wise, leaving the Postmaster General free to act in all other respects.